CHARLES J. SCHUCK, Judge.
On July 23, 1943, .the Monongah Construction Company entered into a contract with the state road commission to surface and stone base a certain project known as no. 3493-810; the road involved leading from Belington to Nestorville, in Barbour county, West Virginia; and covering a distance of approximately eleven miles. The contract, among other things, called for twenty-four thousand cubic yards of unclassified excavation; five hundred cubic yards of excavation for structures and approximately fourteen thousand four hundred cubic yards of knapped stone as the base course complete in place. The unclassified excavation was to be paid for at the rate of 40 cents per cubic yard. The excavation of the five hundred cubic yards for structures, including refilling, was to be paid at $1.50 per cubic yard. The fourteen thousand four hundred cubic yards of broken stone were to be supplied and put in place at the rate of $3.90 per cubic yard. Fourteen thousand four hundred cubic yards of knapped stone, complete in place, were to be supplied and placed at *355 $3.95 per cubic yard; and forty-three thousand gallons cold surface application, asphalt applied, one-third gallon per square yard, was to be supplied at 10.3 cents per gallon; sixty-five thousand gallons of cold surface tar application at 12 cents per gallon; four thousand two hundred tons cover coat of limestone chips, complete in place, at $4.50 per ton and four cubic yards of class B concrete at $25.00 a yard; three thousand feet eight-inch perforated corrugated metal pipe, complete in place, at $1.00 a foot; one hundred linear feet of pipe culvert, complete in place, at $2.00 a foot; four hundred- and twenty cubic yards of loose stone for underdrains, delivered in place, for $4.00 a cubic yard; making approximately a total price or cost of $160,000. The contract was originally awarded to the Monongah Construction Company and afterward assigned to the claimant here. The work was to start in July of 1934, but seemingly delayed until September of that year before work actually began. It was completed sometime in 1935.
The testimony shows that during the course of carrying on the project, which, as indicated, was rather extensive and entailed a large amount of excavating and material, there were many difficulties and disputes between the contracting firm and the road officials and supervisors, during which time some of the material was condemned and the contracting concern ordered to replace it; for certain reasons the excavating could not be carried out as originally planned and as shown on the plans and specifications, and the contracting firm alleges it was put to additional costs and expenses in carrying out the contract as changed and not provided for in the plans and specifications or the original contract itself.
Concerning these many disputes, the testimony is very conflicting. The claimant company maintains that it was obliged to do considerable extra work and furnish extra material not contemplated in any way by the contract. This contention, of course, is denied by the state department and we are there *356 fore obliged to carefully examine the record in order that we may be able to separate the good from the bad, the wheat from the chaff, and the essential from the nonessential. The claim, as prosecuted here, is in the amount of $33,617.50. The record is very long and voluminous and we have given much time to the consideration of the various questions -presented and the problems involved, and repeat that we have sought to eliminate the unimportant and highly conflicting testimony from that which we consider pertinent and conclusive in the endeavor to settle the issues that were presented at the time of the hearing.
By reason of the conflicting and uncertain testimony with reference to the many items for extra work, we have concluded to eliminate from our consideration all such items except two, which we feel are supported by a fair and impartial analysis of the testimony and should be paid.
The question of the widening of the berm beyond that contemplated in the contract and the plans and specifications, seems to be definitely settled; and the testimony, as shown by claimant’s witnesses and supported to a degree by the state’s witnesses, tends to show that there were 45,306 cubic yards of extra berm construction for which claimant was at no time paid and to which item he is entitled to remuneration at the rate of $.0424 per yard. There are admissions by the state’s witnesses that this extra berm construction was found necessary under the circumstances and conditions presented in carrying on the project, the only question being as to the amount of yardage involved and whether or not payment had been made. There is also testimony tending to show that by reason of the widening of the berm, the contracting firm was saved other expenses such as extra hauling, which would have been necessary had the berm not been widened to the width eventually established; however, when this matter is taken into consideration with the extra excavating that was found necessary, the claimant would be entitled in our opinion *357 either to the extras on the excavations or in the matter of widening the berm. We have taken the item with reference to the increased berm as being in our opinion equitable and just to all parties concerned. The rock formation required to be removed for subgrade purposes likewise seems not to have been fully contemplated by the contract or the plans and specifications, and yet we feel that the contracting concern is being rewarded in this extra item by the increasing of the width of the berm where the extra excavation was and could be deposited with the least expense to claimant, as well as to the state. We therefore allow as one of the items the matter for the extra berm (record p.p. 25-26, record p. 114) of 45,306 cubic yards at $.0424 per yard or $1920.97. The other item which is allowed is the matter of 150 feet of pipe at $1.00 extra, amounting to $150.00 (record p. 81), making a total allowance of $2070.97, for which an award will be recommended. In the matter of the item for extra pipe, the record nowhere reveals a contradiction of the witnesses for claimant that this extra item was furnished, that the pipe was used in connection with the completion of the project, and that the item as such was not contemplated by the contract; and therefore an award is made accordingly in the sum of $150.00. In view of all the testimony and our consideration of this record, we recommend an award in the amount of two thousand seventy dollars and ninety-seven cents ($2070.97).